**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **KIMBERLY EUBANKS,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE** |
| | : | **NO. 1:11-CV-3969-AJB** |
| **v.** | : | |
| | : | |
| **HENRY COUNTY, GEORGIA,** | : | |
| | : | |
| **Defendant.** | : | |

**O R D E R   A N D   O P I N I O N**[1]

In this action, Plaintiff Kimberly Eubanks raises claims against Defendant Henry County, Georgia for gender discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant has moved for summary judgment, [Doc. 66]; and Plaintiff has moved for leave to file a sur-reply, [Doc. 112], and filed a construed motion to strike two exhibits referred to by Defendant, [Doc. 113]. For the reasons herein, the Court **DENIES** the motion for leave to file a sur-reply, [Doc. 112]; **DENIES** the construed motion to strike, [Doc. 113], but does not rely on the three statements at issue; and **GRANTS** the motion for summary judgment,

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Docs. 9, 10]. Therefore, this Order constitutes a final Order of the Court.

[Doc. 66].

## I.      Motion for Leave to File Sur-Reply, [Doc. 112]

Plaintiff requests leave to file a sur-reply brief because she contends that Defendant has (1) offered new legal arguments, (2) argued that Plaintiff's counsel has misrepresented deponent Angie Bailey's testimony to the Court, and (3) misstated facts.  [Doc. 112 at 1].  Defendant responds that Plaintiff's proposed sur-reply brief responds to arguments that were either articulated in Defendant's principal brief or were in direct response to argument articulated by Plaintiff in opposition.  [Doc. 115 at 3].

Courts in this District typically exercise their discretion to allow a party to file a sur-reply brief "in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review."  *Stephens v. Trust for Public Land*, 475 F. Supp. 2d 1299, 1303 (N.D. Ga. 2007) (Story, J.).  Otherwise, "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs."  *Fredrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (Duffey, J.) (quoting *Garrison v. Northeast Georgia Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (O'Kelley, J.)).  Because it appears to

AO 72A
(Rev.8/8
2)

the Court that Defendant's reply brief addresses arguments in its own initial brief and/or raised by Plaintiff in her response, the Court **DENIES** the motion to file a sur-reply.

## II.     Construed Motion to Strike, [Doc. 113]

Plaintiff has filed a document entitled "Evidentiary Objections to Exhibit I and Document 62." [Doc. 113].  She requests that the exhibits be deemed inadmissible and that all statements and arguments associated with them be stricken from the record; the Clerk of Court has construed Plaintiff's evidentiary objections as a motion to strike.  [*Id.* at 4].  Plaintiff objects to Defendant's references to Exhibit I and Document 62 in its reply brief in support of summary judgment; she contends these documents are inadmissible evidence and cannot be cited as support for any arguments in the reply.  [*Id.* at 1].  Exhibit I is a letter from Plaintiff's counsel to the Court, regarding a discovery dispute.  [Doc. 109-1; *see also* Doc. 57 (Minute Entry for Discovery Telephone Conference)].  In that letter, Plaintiff states that an email from Building Department Head Bert Foster was "extremely significant," and she argues that she is entitled to certain documents she is seeking because they are responsive to a discovery request for documents "relating to the employment or treatment of similarly situated individuals to Plaintiff."  [Doc. 109-1 at 2, 4].  Document 62 is Plaintiff's

3

response to a motion for protective order by Defendant, regarding the continuation of the deposition of Mr. Foster. [Doc. 62]. Therein, Plaintiff states that Mr. Foster is a "key witness." [Doc. 62 at 3].

Plaintiff contends that Exhibit I and Document 62 are inadmissible as evidence because they were drafted by Plaintiff's counsel as an advocate for Plaintiff. [Doc. 113 at 2]. She also argues that the documents are hearsay. [*Id.* at 2 n.1]. Defendant argues that an attorney's statements to a court are evidence when tendered by an adverse party, and it contends that the statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D), which concerns admissions of a party's agent. [Doc. 114 at 2-4].

The Court notes that Defendant has not asserted that Plaintiff's statements constitute binding judicial admissions, but instead claims that the statements are admissions by a party, which at least one court has deemed "garden-variety" admissions. *See Chaffee v. Kraft General Foods, Inc.*, 886 F. Supp. 1164, 1168 (D.N.J. 1995) ("The latter variety of admissions (as opposed to judicial admissions) consists of statements made by a party, or his agent, which are admissible against the party, for example, to point out inconsistencies in testimony to the trier of fact.") (citations omitted)); *see also Abrams v. Ciba Specialty Chems. Corp.*, 663 F. Supp. 2d 1243, 1249

4

n.14 (S.D. Ala. 2009) (discussing the doctrine of judicial admission and citing cases for the proposition that statements in briefs may be treated as binding judicial admissions of fact).[2]  Judicial admissions are not evidence, but have the effect of withdrawing a fact from contention; evidentiary admissions, on the other hand, may be controverted or explained by the party.  *See Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) (citation omitted)).  The significance of an admission by a party's agent "is for the trier of fact to determine."  *Chaffee*, 886 F. Supp. at 1168.

The Court has considered Plaintiff's reasons for requesting that the exhibits be deemed inadmissible and finds that Plaintiff's arguments are misplaced.  *See, e.g.*, *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 996 (8th Cir. 2008) ("A statement by a party's attorney can be admissible as an admission by a party opponent if it is relevant.").     Plaintiff relies upon *Duke v. Atria, Inc.*, No. 2:03-cv-934-DRB, 2005 WL 1514149, at *2 (M.D. Ala., June 27, 2005), for the proposition that "advocacy is not evidence and briefs cannot substitute for affidavits and other admissible evidence to defeat a motion for summary judgment . . . ."  However, as

---

[2]     Even if the Court were to determine that these statements constituted judicial admissions, the Court in its discretion would decline to consider them. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (discussion judicial admissions and noting that "statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court.") (emphasis in original).

5

Defendant points out, Plaintiff has failed to acknowledge the context of this statement, which was prompted by a party's attempt to exclude the opposing party's brief by making vague references without citation to specific records, documents, or other items offered by the opposing party as evidence. *See id.* Thus, this case is inapplicable here.

Moreover, Plaintiff has not cited a procedural rule providing for striking the statements and arguments. The Federal Rules of Civil Procedure provide that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) applies only to matters within the pleadings[.]" *Jordan v. Cobb County, Ga.*, 227 F. Supp. 2d 1322, 1346 (N.D. Ga. 2001) (Carnes, J.). Pleadings include complaints, answers, replies to counterclaims, answers to cross-claims, third-party complaints, and third-party answers. *See* Fed. R. Civ. P. 7(a); 2 James Wm. Moore, *et al.*, Moore's Federal Practice § 12.37(2) (3d ed. 1999) ("Only material included in a 'pleading' may be subject of a motion to strike . . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

Even so, the Court is not persuaded that the statements at issue carry the significance that Defendant imputes. The Court has reviewed the statements and the documents in which they appear, and it has considered the context for the statements

that Plaintiff provides in support of her motion.  [Doc. 113 at 2-4].  *See Structural Polymer Group*, 543 F.3d at 996 (discussing the district court's consideration of the context of an attorney's statement and finding no abuse of discretion where court allowed admission of statement made by attorney at a preliminary injunction hearing). The Court observes that the statements describing the estimated importance of the witness and his email were made in the midst of discovery when facts were in the process of taking shape.  The same is true of the statement regarding the document request for items related to similarly situated individuals, and that statement also is more a legal conclusion than an evidentiary admission.  *See Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, No. 07 C 5675, 2013 WL 3791609, at *4 (N.D. Ill. July 19, 2013) (declining to accept a statement as an evidentiary admission of a party's agent pursuant to Rule 801(d)(2)(D), in part because the statement as to contract interpretation was more "in the nature of a legal conclusion").  The Court concludes that the statements are evidentiary admissions but declines to rely on the statements.

For these reasons, the Court **DENIES** Plaintiff's construed motion to strike the exhibits, [Doc. 113], but it will not rely on the three statements at issue (*i.e.*, that the email from Mr. Foster was "extremely significant," that he himself was a "key

7

witness," or that the documents referred to in Plaintiff's letter to the Court necessarily signify that a particular person is similarly situated to Plaintiff).

### III.    Motion for Summary Judgment, [Doc. 66]

#### A.    Facts

As required when considering a motion for summary judgment, the Court has viewed the evidence and factual inferences in the light most favorable to Plaintiff, the nonmoving party.    *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor.  *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).  The facts of the case, for the purpose of adjudicating Defendant's motion for summary judgment, are therefore as follows.[3]

Plaintiff was initially hired by Henry County in July 2000 as a Residential Inspector.  (D ¶ 1; P. Resp. ¶ 1).[4]  In February 2002, Plaintiff left her county

_____

[3]    The facts recited in this section are intended to establish the context of the case.  Additional facts will also be recited in the discussion section below.

[4]    Paragraph numbers preceded by "D" refer to Defendant's Statement of Undisputed Material Facts, filed in support of its motion for summary judgment, [Doc. 66-2], and paragraph numbers preceded by "P" refer to Plaintiff's Statement of Material Facts, [Doc. 108-1], filed in opposition to Defendant's motion for summary judgment.  Plaintiff's and Defendant's responses to the statements of material fact will be designated as "P. Resp.," [Doc. 108-3], and "D. Resp.," [Doc. 110], respectively.

8

employment to work for the State of Georgia.  (D ¶ 2; P. Resp. ¶ 2).  Plaintiff then was re-hired by Henry County effective March 18, 2002.  (D ¶ 3; P. Resp. ¶ 3).  In 2006, Plaintiff was promoted to the position of Commercial Inspector.  (D ¶ 5; P. Resp. ¶ 5).

In 2011, the County implemented a reduction in force ("RIF") because of a revenue shortfall.  (D ¶¶ 8, 10-11; P. Resp. ¶¶ 8, 10-11).  At the time of the implementation of the RIF, Michael Harris was the Division Director of Planning and Zoning.  (D ¶ 8; P. Resp. ¶ 8).  Harris oversaw multiple departments, including the Building Department.  (D ¶ 9; P. Resp. ¶ 9).  Also at this time, Bert Foster was the Department Head over the Building Department.  (D ¶ 34; P. Resp. ¶ 34).  Foster reported to Harris, who in turn reported to County Manager Butch Sanders. (Deposition of Butch Sanders (hereinafter "Sanders Dep.") [Doc. 77-1] at 10).

At the beginning of the process that culminated in the 2011 RIF, the County's Finance Department instructed Harris to cut $448,000 in employee expenditures from the budget of the Building Department.  (D ¶¶ 17-18; P. Resp. ¶¶ 17-18).  In all, 59 employees, including Plaintiff, were eliminated in connection with the 2011 RIF. (D ¶ 67; P. Resp. ¶ 67; P ¶ 7; D. Resp. ¶ 7).  Since 2005, the County used seniority to determine which individuals would be selected for lay-off.  (D ¶ 20; P. Resp. ¶ 20).

The calculation of seniority for individuals who left the county's employment

9

and later returned could be affected by "bridging," a practice that in some circumstances allowed the individual to have his or her initial hire date (as opposed to the re-hire date) listed as the official date of hire.  (*See* 30(b)(6) Deposition of Tara Eberhart (hereinafter, "Eberhart 30(b)(6) Dep.") [Doc. 75] at 83-84).[5]  Decisions concerning whether a re-hired employee's time would be bridged were made by the County Manager.  (D ¶ 78; P. Resp. ¶ 78).  On April 22, 2010, Plaintiff made her first written request to have her time bridged.  (P ¶ 18; D. Resp. ¶ 18).  This request was made through Human Resources Director Angie Bailey, who conveyed it to County Manager Sanders.  (P ¶¶ 19, 22; D. Resp. ¶¶ 19, 22).  Plaintiff requested that her time be bridged back to her original hire date of July 10, 2000.  (P ¶ 21; D. Resp. ¶ 21).  Sanders indicated to Bailey that he wanted to think about the request and that they needed to develop procedures for bridging.  (P ¶ 24; D. Resp. ¶ 24).  Some time later, Bailey told Sanders that based upon the bridging policy Sanders had begun drafting, Plaintiff qualified to have her time bridged.   (P ¶¶ 29, 31; D. Resp. ¶¶ 29, 31).

On April 15, 2011, Harris met with the Budget Committee; those present

---

[5]      Defendant draws a distinction between "service bridging," as described in the text, and "benefit bridging," a practice that enabled a re-hired employee to accumulate leave and retirement benefits based on the initial hire date, but used the re-hire date as the official date of hire.  (D. Resp. ¶ 8).

AO 72A
(Rev.8/8
2)

included Sanders, Budget Director Angie Sorrow, Finance Director Mike Bush, and Brenda Bennett.  (P ¶ 48; D. Resp. ¶ 48).  The Committee discussed the ability of the Commercial Inspectors also to perform residential inspections.  (P ¶ 51; D. Resp. ¶ 51).  It also discussed the importance of seniority in the RIF analysis.  (P ¶¶ 52-54; D. Resp. ¶¶ 52-54).  Harris submitted his RIF recommendations to the Budget Department[6] on several different occasions.  (P ¶ 55; D. Resp. ¶ 55).  On April 27, 2011, in an email to Sorrow, Harris indicated that the following Building Department positions and employees had been discussed for elimination:   Chief Residential Building Inspector (Butch Friel), Residential Building Inspector II (Carla Brown), Residential Building Inspector II (David Perry), Commercial Building Inspector I (Plaintiff Kimberly Eubanks), Permits and License Clerk (Amanda Thomas), and Clerk Typist (Elaine Arias).  (P ¶ 56; D. Resp. ¶ 56).  The information was shared with the Board of Commissioners on May 2, 2011.  (P ¶¶ 57-58; D. Resp. ¶¶ 57-58).  The information also was incorporated into the Finance Department's spreadsheet of the first round cuts.  (P ¶ 59; D. Resp. ¶ 59).  A later memorandum from Harris to Sanders provided the same list and provided that "(t)he elimination of positions was derived

---

[6]       It appears from the record that there was both a Budget Committee and a Budget Department.

11

based on seniority at the respective positions." (P ¶ 79-80; D. Resp. ¶ 79-80; Doc. 88-1 at 39).

On May 5, 2011, Plaintiff contacted Bailey regarding the status of her bridging request, and Bailey advised that she had already informed Harris of the request; Bailey then spoke to Sanders regarding the request. (P ¶ 65-67; D. Resp. ¶ 65-67). Bailey told Plaintiff she would remind Sanders again as the budget cuts approached. (P ¶ 73; D. Resp. ¶ 73).

On May 31, 2011, the Board of Commissioners adopted the RIF list, which included the same Building Department employees that were listed in Harris's April 27 email. (P ¶¶ 86, 99; D. Resp. ¶¶ 86, 99). On or around June 8, 2011, Friel was removed from the RIF list and replaced by Commercial Inspector Keith Krieger. (P ¶ 103; D. Resp. ¶ 103).

On June 10, 2011, Plaintiff was informed that she was being eliminated as part of the RIF. (P ¶¶ 117-18; D. Resp. ¶¶ 117-18; Declaration of Kimberly Eubanks (hereinafter, "Plaintiff Decl.") [Doc. 108-2] ¶ 15). On June 15, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") related to her elimination.   (D ¶¶ 74-75; P. Resp. ¶¶ 74-75; P ¶ 130; D. Resp. ¶ 130).

The bridging policy that Sanders had been drafting was made operational "shortly after" the RIF was completed.  (P ¶ 141; D. Resp. ¶ 141; Deposition of Angela Bailey (hereinafter, "Bailey Dep.") [Doc. 76-1] at 130).  It was first applied to an employee on July 25, 2011.  (Eberhart 30(b)(6) Dep. at 26-27).

### B.    Summary Judgment Standard

"Summary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' "   *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)).  The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."    *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 323).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

13

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*  If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995).  On the other hand, if the record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion and proceed to trial. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*,

14

240 F.3d 1317, 1320 (11th Cir. 2001)).

###### C.     Legal Framework

Plaintiff brings claims of employment discrimination under Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

To establish a claim under Title VII, an individual may proffer direct or circumstantial evidence of discrimination.   *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  When a party relies on circumstantial evidence to prove his case of discrimination, as Plaintiff does in the instant case, courts employ the familiar burden-shifting framework articulated by the Supreme Court *in McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 772 (11th Cir. Nov. 24, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima*

AO 72A
(Rev.8/8
2)

*facie* case of discrimination.  *See, e.g., Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  If a plaintiff establishes a *prima facie* case, she has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action.  *Id.*  If the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination."  *Id.* (quoting *EEOC v. Joe's Stone Crab, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002)).  To demonstrate pretext, the plaintiff must provide evidence that "reveal(s) 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.' "  *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)).  Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 1999) (quoting *Burdine*, 450 U.S. at 253).

16

###### 1.     Claims Related to Promotion Denials and Unpaid Wages

As an initial matter, the Court notes that Plaintiff's complaint contains claims related to promotion denials and unpaid wages–claims that Defendant argues were not included in her EEOC charge and in any event are time-barred.  [Doc. 66-1 at 2-5; *see* Doc. 1].  Plaintiff, represented by counsel, does not counter this argument, and agrees that she cannot seek damages for untimely claims.  [Doc. 108 at 27; *see generally* Doc. 108].

Allegations related to Title VII that a plaintiff later sets forth in a judicial complaint must have been raised in her EEOC charge, and to determine whether such allegations were previously raised, "the proper inquiry" is whether the "complaint was like or related to, or grew out of, the allegations contained in (a plaintiff's) EEOC charge."   *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) ("A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)).  A failure to promote is a discrete act, and a timely EEOC charge must be filed with respect to each alleged violation.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

17

A charge is timely in a non-deferral state such as Georgia when it is filed within 180 days of the last discriminatory act. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Plaintiff testified in deposition that the last promotion denial occurred in August of 2010. (Deposition of Kimberly Eubanks (hereinafter, "Plaintiff Dep.") [Doc. 111] at 33-34). She also admitted in her Response to Defendant's Statement of Materials Facts that she only filed one EEOC charge and that her charge only referenced her separation from employment as a result of the 2011 RIF. (P. Resp. ¶¶ 74-75).

For these reasons, the Court concludes that Plaintiff did not administratively exhaust her claims for failure to promote and that any such claim is time-barred.

To the extent that Plaintiff has attempted to raise claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, such claims also are time-barred. Plaintiff has admitted that the last time she trained someone without being compensated was 2003. (P. Resp. ¶ 73). A FLSA claim must be filed within two years after the cause of action accrued, or within three years, if the cause of action arises out of a willful violation. 29 U.S.C. § 255(a). Having filed her complaint beyond these limitations periods, any claim for unpaid wages is time-barred.

For these reasons, the Court concludes that any claims that Plaintiff may have

18

intended to bring related to failure to promote or unpaid wages have been abandoned.

### 2.    Title VII Reduction in Force *Prima Facie* Case

The Court now turns to Plaintiff's claim of discrimination.  When a plaintiff is terminated through a reduction in force, she establishes a *prima facie* case of discrimination by "(1) showing that (she) was a member of a protected group[; (2) establishing she] was adversely affect by an employment decision; [(3)] proving that [she] was qualified for [her] position or to assume another position at the time of the discharge; and [(4)] producing sufficient evidence from which a rational fact finder could conclude that h[er] employer intended to discriminate against h(er) in making the discharge decision."  *Lawver*, 300 Fed. Appx. at 773 (quoting *Standard*, 161 F.3d at 1331); *see also Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995) (same); *Conner v. Bell Microproducts-Future Tech, Inc.*, 492 Fed. Appx. 963, 965 (11th Cir. Oct. 24, 2012) (same).  In order to satisfy the fourth prong, the plaintiff must produce some evidence that the employer did not treat her neutrally with respect to her protected-class membership, but, instead, discriminated upon it.  *Id.*  The evidence must lead the factfinder to reasonably conclude either that the employer consciously refused to consider retraining or relocating the plaintiff due to her protected-class membership,

19

AO 72A
(Rev.8/8
2)

or that the employer considered her protected-class membership as a negative factor in that consideration.  *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005). "[S]ummary judgment against the plaintiff is appropriate if (s)he fails to satisfy any one of the elements of a *prima facie* case."  *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) (ADEA context).

Defendant contends that Plaintiff's case depends on the fourth element above, *i.e.*, whether Plaintiff can produce sufficient evidence to allow a rational fact finder to conclude that her position was eliminated based on discriminatory intent.  [Doc. 66-1 at 8].  Therefore, the Court assumes for purposes of summary judgment that the first three elements of a *prima facie* case involving a RIF can be satisfied.

### a.    The Two RIF Lists

The Court first addresses the parties's respective positions concerning the two RIF lists, *i.e.*, the one approved by the Commissioners on May 31 and the one implemented following June 8.  Defendant argues that the legal effect of the two RIF lists was the same, because whether or not Plaintiff's time was bridged, Plaintiff's job would have been eliminated as part of the 2011 RIF, based on the June 8 RIF List. [Doc. 109 at 3].  The record is undisputed that without bridging, Plaintiff was the least senior Commercial Inspector.  Plaintiff Dep. at 45 (corrected via Plaintiff's errata

20

sheet [Doc. 66-3], Exhibit C at 2); Deposition of Michael Harris (hereinafter, "Harris Dep.") [Doc. 84] at 85).  With bridging, she would have been the second least senior Commercial Inspector.  Harris Dep. at 85; Harris Dep., Ex. 2 [Doc. 93-1] at 4. The record also shows that, ultimately, when the June 8 RIF List was implemented, two employees were eliminated from each section of the Building Department–the Commercial, Residential, and Administration sections.  [Doc. 66-3 at 13; Deposition of Bert Foster I (hereinafter, "Foster Dep. I") [Doc. 85-1] at 153-54].  Under this so-called "2/2/2" plan, Plaintiff and Krieger were laid off from the Commercial section, since they were the two least senior members of the Commercial section.

Plaintiff argues that the analysis is not that straightforward.  She proffers the May 31 RIF List as a starting point, for which the failure to bridge has an effect on seniority.  She also contends that an important difference between the two lists is that the May 31 RIF List includes Friel, and the June 8 RIF List removes Friel from elimination and adds Krieger.[7]  Additionally, although the June 8 RIF List utilizes the

---

[7]    The May 31 RIF List identified for discharge the following persons: Chief Residential Building Inspector (Butch Friel), Residential Building Inspector II (Carla Brown), Residential Building Inspector II (David Perry), Commercial Building Inspector I (Plaintiff Kimberly Eubanks), Permits and License Clerk (Amanda Thomas), and Clerk Typist (Elaine Arias).  (P ¶¶ 56, 86, 99; D. Resp. ¶¶ 56, 86, 99).

The June 8 RIF List identified the following persons for discharge:

2/2/2 plan, which draws equal numbers from each section of the Building Department, the positions on the May 31 RIF List do not break down neatly into a 2/2/2 pattern. Instead of using seniority to eliminate two employees from each section, the May 31 RIF List appears to use seniority to eliminate employees from the Building Department as a whole. The May 31 RIF List thus results in elimination of three employees in the Residential section (effectively eliminating the entire Residential section), one employee in the Commercial section (Plaintiff), and two employees in the Administrative section. (P ¶ 79-80; D. Resp. ¶ 79-80; [Doc. 88-1 at 39]). Plaintiff argues that if her time had been bridged as requested, and if the approach (i.e., seniority) behind the May 31 RIF List ultimately had been used, resulting in the elimination of one Commercial Inspector, she would have been spared because she would have been senior to Krieger. (*See* Deposition of Angie Sorrow (hereinafter, "Sorrow Dep.") [Doc. 82-1] at 124). The central issue from Plaintiff's perspective, therefore, is the change in approach from the May 31 RIF List, which generally considered seniority, to the June 8 List, which reflected the 2/2/2 plan.

---

Residential Building Inspector II (Carla Moore-Brown), Residential Building Inspector II (David Perry),  Commercial Building Inspector I (Keith Krieger), Commercial Building Inspector I (Plaintiff Kimberly Eubanks), Permits and License Clerk (Amanda Thomas), and Clerk Typist (Elaine Arias).  [Doc. 66-3 at 13].

### b.    Plaintiff's *Prima Facie* Argument

Using the May 31 RIF List as her starting point for building her *prima facie* case of discrimination, Plaintiff contends that Sanders' failure to bridge her time was discriminatory and resulted in her inclusion in the RIF. [Doc. 108 at 8-14]. She argues that bridging requests by male employees were granted prior to the time she made her request. [*Id.* at 12]. She further argues that the June 8 RIF List, which saved Friel's job, was implemented by Sanders, and that there was a causal connection between this action and his gender-based animus in the failure to grant her bridging request. [*Id.* at 13].

As for Sanders' failure to grant Plaintiff's bridging request, while at the same time granting the bridging requests of certain male employees, there is no doubt that Sanders was approached more than once about Plaintiff's request and did not resolve the matter, and there is no doubt that the County bridged time for certain male employees. Plaintiff identifies eight males for whom the county manager (whether Sanders or his predecessors) approved bridging requests. [*Id.* at 12]. She also notes that in March 2011, Sanders approved a bridging request for Paul Roberts. [*Id.* (citing Eberhart 30(b)(6) Dep. at 92-94)].

Additionally, Plaintiff argues that Sanders "implemented" the June 8 RIF List.

23

However, the record shows that the decision to remove Friel from the May 31 RIF List, which resulted in the June 8 RIF List, was initiated not by Sanders but by Harris after Harris' discussions with Foster. *See* Harris Dep. at 92, 168, 192-93 (discussing meeting with Foster and stating, *e.g.*, that the considerations for retaining Friel included ensuring smooth continuation of residential inspections, his ability to handle administrative duties, and his supervisory experience); Foster Dep. I at 56, 75 (discussing meetings with Harris).  In addition, Foster sent an email on May 26, 2011, to Finance Director Bush, with a copy to Harris, providing reasons why Friel should be spared from the RIF.  [Doc. 98-1 at 7 (stating that laying off the entire Residential section would not be beneficial to the general public or the residential building community, residential permit activity was increasing, Friel's experience in the residential construction field was valuable, his salary was comparable to that of Commercial Inspector I, and he would be eligible for retirement in approximately two years)]; Deposition of Bert Foster II, (hereinafter, "Foster Dep. II") [Doc. 80-1] at 12, 19, 34 (explaining that the purpose of the May 26 email was to keep the Residential section "intact," i.e., in existence)).

Even if Sanders ultimately removed Friel from the RIF list after Harris and Foster decided to retain Friel, there is no evidence tying this decision to Sanders' failure

24

to bridge Plaintiff's time of service.  Plaintiff argues that the alteration of the May 31 RIF List was orchestrated so that her bridging request "would not matter," which Plaintiff contends was Bailey's account of a comment made by Harris. [Doc. 108 at 24, 41]; (Bailey Dep. at 81-82).  Bailey's testimony actually was that Harris, upon being reminded of Plaintiff's pending request for bridging, had "said that they had been having meetings and based on what appeared would be the outcome of the workforce reduction in that department, he said I will keep that in mind, but it doesn't appear that that is going to make any difference." (Bailey Dep. at 82).  Even viewing this statement in the light most favorable to Plaintiff, this comment refers to the 2/2/2 plan, under which Plaintiff's bridged time would not have spared her from the RIF.  Plaintiff asserts that the remark was made after May 31, 2011, and she cites Bailey's deposition to show the same, but this time line is not supported by Bailey's testimony, because the events to which Bailey was referring occurred before May 31, 2011.  (*See* Bailey Dep. at 81-82 (stating that the conversation with Harris occurred "during the budget process" when she saw the "second round list), 83 ("I know it was prior to the final adoption of the budget, but I can't give you a date.").  Harris's remark does not suggest that Sanders or anyone else intended to discriminate against Plaintiff by saving Friel's job, and Plaintiff does not provide evidence to support her speculation–she simply rests on her

AO 72A
(Rev.8/8
2)

assertion that Sanders was the final decision-maker as to both the bridging request and who would be included in the RIF. [*See* Doc. 108 at 13].

Although the Court is not persuaded by Plaintiff's preceding argument, it finds that Plaintiff's argument as to the male employees who received bridging satisfies her burden of showing at least a genuine issue of material fact as to whether she suffered disparate treatment in the bridging denial/inaction, and thus she establishes a *prima facie* case on this ground. Simply stated, although Defendant proffers evidence that Plaintiff was not bridged because the bridging policy was being drafted and not in existence, there is evidence to demonstrate that male county employees were being bridged prior to any formal or informal "adoption" of the policy.

### 3.    Legitimate, Non-Discriminatory Reason

The Court now turns to Defendant's legitimate, non-discriminatory reason for its action. Defendant states that the 2011 RIF occurred because of economic pressures resulting from a decrease in revenues. [Doc. 66-1 at 20]; *see also* D ¶¶ 10-11; P. Resp. ¶¶ 10-11. Defendant further states that Plaintiff was selected for the RIF based on seniority, a neutral criterion. [Doc. 66-1 at 20]; *see also* D ¶ 20; P. Resp. ¶ 20. The Court concludes that Defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions. *See Coutu*, 47 F.3d at 1073 ("In this case, the

Board articulated a legitimate, non-discriminatory reason for Coutu's termination: due to County budgetary constraints, the Board decided to merge three County positions, thus eliminating Coutu's position, to produce a yearly savings of $56,000.00. "); *Chavez v. URS Federal Technical Svcs., Inc.*, 504 Fed Appx. 819, 821 (11th Cir. Jan. 3, 2013) (RIF due to budget cuts constituted legitimate nondiscriminatory reason); *Lightsey v. Potter*, 268 Fed. Appx. 849, 851 (11th Cir. Mar. 10, 2008) (promotion decision based on seniority was legitimate non-discriminatory reason).

### 4.      Pretext

The burden therefore shifts back to Plaintiff to show that the reasons articulated by Defendant are pretext for prohibited conduct.   A plaintiff survives summary judgment if she provides evidence sufficient to allow a reasonable fact finder to determine that the employer's articulated, nondiscriminatory reasons are pretext for unlawful discrimination.   *McDonnell Douglas Corp.*, 411 U.S. at 804-07; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (finding that "plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence") (internal citations omitted); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Put another way, the "pretext analysis focuses on a narrow question:  Would the

AO 72A
(Rev.8/8
2)

proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002). In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson*, 405 F.3d at 1289 (quoting *Combs*, 106 F.3d at 1538) (internal citations omitted). A finding that the employer's reason is not worthy of credence may, though not always, prove pretext because the evidence still must show that the employer was motivated by intentional discrimination. *See Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 n.1 (11th Cir. 1994) (citing *Hicks*, 509 U.S. at 511).

Plaintiff argues that pretext is shown in (1) Defendant's explanation that Sanders did not approve her request because the bridging policy had not yet been formally adopted and because he did not think her bridging request was important; and (2) (i) the use of the "unapproved" June 8 RIF List itself, (ii) because Friel in the past received favorable treatment based on unlawful discrimination in order to be in a position to escape the RIF, (iii) the development of the June 8 RIF List did not follow the County's legal obligations or the RIF criteria outlines by the Budget Committee,

28

and (iv) Defendant gave contradictory reasons for altering the May 31 RIF List.  The Court finds that Plaintiff has failed to show that Defendant's stated reasons for its actions are not worthy of credence or that Defendant was motivated by intentional discrimination.

### a.   Adoption of the Bridging Policy and Sanders' Claim That He Did Not Think the Request Was Important

Plaintiff contends that pretext can be established through Defendant's explanation that the bridging policy Sanders was drafting had not yet been formally adopted; she maintains that Sanders could have granted Plaintiff's bridging request even without the policy.  [Doc. 17-20].  She also takes issue with Sanders' testimony that he did not realize that the request was "an important(,) critical issue."  [*Id.* at 21].

The Court notes that Plaintiff's brief at times refers to the "completion" of the policy in March 2011; however, the record shows that a *draft* of the policy was completed in March 2011.  On July 20, 2011, County Attorney LaTonya Wiley sent an email to the EEOC, in which she stated, "Attached is the draft policy that the County Manager, Butch Sanders, completed in March of this year concerning 'bridging' time.  The policy was never formally adopted; however, had it been adopted, Ms. Eubanks certainly would have qualified."  [Doc. 95-1]; *see also* Sanders Dep. at 55 (stating that

29

the draft was completed in March 2011 but that it was "still being worked on").  The policy was not applied to an employee until July 25, 2011.  Eberhart 30(b)(6) Dep. at 26-27.

Plaintiff has not presented sufficient evidence to show pretext in Sanders' failure to grant Plaintiff's bridging request before the policy was in place.  Plaintiff provides examples of two male employees, Gary Little and Barry Garmon, and argues that their requests were granted outside of the policy after it was operational.  [Doc. 108 at 20].  Plaintiff argues that even though Little "did not fit into the guidelines," Sanders made an exception and bridged his time.  [*Id.*].  She further argues that Garmon did not qualify for bridging under the guidelines, but Sanders used his executive authority to grant bridging anyway.  [*Id.*].  Defendant responds that Garmon, a firefighter, was treated the same as Plaintiff because his request was deferred–he did not receive bridging until October 19, 2011, after the RIF was completed.  [Doc. 109 at 26-28].  It also argues that Paul Roberts, another male employee mentioned by Plaintiff, [Doc. 108 at 12], whose time was bridged in March 2011, is not similarly situated to Plaintiff or Garmon because he received bridging in connection with being rehired, as opposed to seeking retroactive bridging, as Plaintiff terms it.  [Doc. 109. at 26-17]. Defendant argues that a finder of fact must conclude that, because Plaintiff was treated identically

30

to Garmon, in that their requests were deferred, Sanders must have considered retroactive bridging requests like theirs differently from requests from former employees seeking to return, like Roberts.  [*Id.* at 27].[8]

The thrust of Plaintiff's argument is that since Sanders relied on his executive authority to grant these bridging requests, he could have done the same for her. Although this may be true, it does not establish that there is a genuine issue of material fact as to pretext.   In order to establish circumstantial evidence of discrimination via a comparator, the plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)); *cf. Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008) ("The quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing

---

[8]       Defendant did not address Plaintiff's citation to Little's situation. However, according to Sanders and the exhibits to his deposition, Little was re-hired by the County into Parks and Recreation, which was handled differently than other departments. Sanders Dep. at 133-34. More important, however, Little was terminated during the July 2011 RIF, but was subsequently rehired, and "bridged," in January 2012.  *Id.* at 145; Doc. 86-1 at 43.  Thus, Little is not an adequate comparator to Plaintiff since the record does not show that he was retroactively bridged in order to avoid being subject to the July 2011 RIF.

31

apples with oranges." (internal alterations and quotation marks omitted)).  Here, there is insufficient evidence to suggest that Plaintiff was similarly situated to Little or Roberts, neither of whom were bridged retroactively in order to maintain continued employment despite the RIF.  Assuming Plaintiff is similarly situated to Garmon, the record shows that both of their requests were deferred.  Even though Garmon's request eventually was granted in October of 2011, this was well after the RIF, when Plaintiff was no longer employed.  Additionally, as discussed *supra*, Plaintiff has not shown that the same decision makers both failed to grant her bridging request and were responsible for her inclusion on the June 8 RIF List.  Consequently, the evidence is insufficient to raise a genuine issue of material fact as to whether Defendant's stated reasons for failing to grant Plaintiff's bridging request were pretext for discrimination.

As for Sanders' testimony that he did not realize that her bridging request was "an important(,) critical issue," Plaintiff finds this "incredulous" because Sanders must have known that "seniority was a principal factor in the selection of individual(s) included in the RIF."  [Doc. 108 at 21].  As Defendant notes, however, there is no evidence that Sanders knew what the new hire date would be if Plaintiff's request were granted or how that new hire date would affect her seniority, if at all.  [Doc. 109 at 25].  Although the Court observes that it would have been prudent to determine whether a

32

pending request for bridging needed to be handled prior to a RIF based in part or whole on seniority, failure to do so does not indicate pretext for discrimination, and the Court need not engage in such speculation because "(f)ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . ." *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *accord Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (same); *Beckles v. Federal Exp. Corp.*, 489 Fed. Appx. Sept. 11, 2012) ("We do not sit as a super-personnel department, and we do not review the wisdom of an employer's business decisions, no matter how mistaken, as long as the action was not for a prohibited discriminatory reason.") (citing *Alvarez*, 610 F.3d at 1266-67).

### b.    June 8 RIF List: Friel's Favorable Treatment

Next, Plaintiff argues that Friel, a male, received favorable treatment even though he only was certified to do residential inspections, whereas Plaintiff could do both commercial and residential. [Doc. 108 at 25].  Plaintiff also provides examples of past favorable treatment of Friel by Defendant, including his promotion into a new position created just for him– Lead Residential Inspector– and that he was then promoted to Chief Residential Inspector, a posting for which required that applicants have

33

experience with the County as Lead Residential Inspector. [*Id.* at 26]. She asserts that he was given a raise in conjunction with the second promotion so that his salary would be higher than hers. [*Id.*]. Plaintiff also contrasts Friel's experience with her own past experiences within the Building Department, which she argues constitute unfair treatment based on her gender as to promotional opportunities and other issues. [*Id.* at 27-30].

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Friel's treatment does not establish evidence of pretext or gender discrimination against Plaintiff. That Friel was only certified to do residential inspections when Plaintiff was able to perform commercial as well as residential inspections ignores the other qualifications that Friel's superiors believed he had (as discussed further in the next section), including that he had supervisory and administrative experience. *See Licausi v. Symantec Corp.*, 378 Fed. Appx. 964, 967 (11th Cir. May 11, 2010) ("We will not second-guess the business decisions of an employer as to the appropriate criteria upon which to rate employees.").

c.      **June 8 RIF List: Contradictory Reasons for Altering the List**

Plaintiff further argues that Defendant has advanced contradictory reasons for

34

altering the May 31 RIF List to remove Friel's name.  She contrasts reasons articulated by Harris (continuity, Friel's ability to handle administrative duties and his supervisory experience) with those articulated by Sanders (that Friel had both residential and commercial qualifications, which "was to become the deciding factor").  [Doc. 108 at 31-21].

The Court finds that these are not conflicting.  Initially, the Court notes that Plaintiff did not accurately recite the record.  Sanders did not state that Friel's residential and commercial qualifications were to become "the deciding factor"; instead, he said this would become "a deciding factor."  (Sanders Dep. at 34).  Sanders also cited Friel's experience as chief, which included making assignments and oversight–in other words, supervisory duties–and administrative duties.  (*Id.* at 95-96).

Moreover, Plaintiff asserts that "there is no evidence" that Sanders was told that Friel could do both types of inspections, yet she includes in her Statement of Material Facts that "Sander[s] testified that he was told by someone in the meeting that [Friel] could do both residential and commercial inspections."  [Doc. 108 at 32 n.6]; P ¶ 106.  Defendant acknowledges that Sanders was incorrect in his belief that Friel also had commercial qualifications.  [*See* Doc. 109 at 14].  However, a reason is not pretext for discrimination "unless it is shown both that the reason was false, and that

35

discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citations omitted). "A plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the person who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by" unlawful discrimination." *Id.* (quoting *Brooks*, 446 F.3d at 1163).  Plaintiff has not satisfied that burden.

Moreover, the Court is not persuaded that the reasons articulated by Harris and Sanders are contradictory in such a way that shows pretext.  With the correct citations to what Sanders actually stated about the effect of Friel's residential and commercial qualifications, Sanders and Harris gave consistent explanations.  As a result, Defendant has proffered consistent nondiscriminatory reasons for Friel's removal from the RIF list.

### d.   June 8 RIF List: Failure to Follow Legal Obligations

Plaintiff argues that the June 8 RIF List, which substituted Krieger for Friel, shows pretext because it did not comport with legal obligations.  [Doc. 108 at 33-37].  In support of her argument, Plaintiff cites Sorrow's testimony as to the steps for

36

development and approval of the County's budget, including meetings for public discussion of the budget and RIF. (Sorrow Dep. at 14-18). The Court also understands her argument to be that the Commissioners approved the initial RIF List on May 31 (which, according to Plaintiff, should not have included her but for Sanders' failure to grant her bridging request), and thus the June 8 RIF list was not authorized. [Doc. 108 at 33-35]. Defendant contends that Plaintiff has no standing to litigate the "Krieger/Friel Swap" because the only person affected by that action was Krieger. [Doc. 109 at 15-16]. Plaintiff's point, however, is that the procedure by which the "swap" was effected shows pretext.

The Court notes that Sorrow further testified that she did not know whether the Board of Commissioners had to give its final approval as to the individuals who were going to be part of the RIF. (Sorrow Dep. at 109). She also stated that she was told by Bush that the Board had approved the changes. (*Id.* at 120). Although Plaintiff's position is that the substitution of Krieger for Friel in the RIF should have been presented to the Board and afforded public discussion, she has not shown the Court evidence that the procedure employed was *ultra vires*, unlawful or unusual or—more importantly here—that the procedure that was used establishes pretext of discrimination against her.

37

It is true that "[d]epartures from normal procedures may be suggestive of discrimination." *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) ("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext[.]"). However, "[s]tanding alone, deviation from a[n employer's] policy does not demonstrate discriminatory animus." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999) (citing, *inter alia*, *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (holding that "deviation from company policy [is] not evidence of discrimination, absent a nexus between deviation and employee's protected status")). Moreover, in the pretext realm, the Eleventh Circuit requires that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *Mitchell*, 186 F.3d at 1355 (citing *Clark*, 990 at 1228).

In this regard, Plaintiff has not shown either a violation of policy or animus. First, although the May 31 RIF list was approved by the Commissioners, Plaintiff has not shown that this list was either irrevocable or not subject to amendment.

Second, Plaintiff claims that discriminatory animus in favor of Friel and against her over a course of time constitutes the necessary underlying discriminatory predicate.

AO 72A
(Rev.8/8
2)

Plaintiff claims that discriminatory animus played a predominant, if not exclusive, role in Friel's promotion to Lead Residential Inspector (even though she had more experience than Friel and trained him) and then Chief Residential Inspector, as well as the subsequent salary increase so that his pay exceeded Plaintiff's (who was inferior to him in the organizational hierarchy).   She argues that these past allegedly discriminatory actions can be considered by the Court in finding discrimination in this instance.

While the Court agrees with Plaintiff that it can consider time-barred instances to demonstrate discrimination, *Allen v. Montgomery County, Ala.*, 788 F.2d 1485, 1488 (11th Cir. 1986), the Court rejects Plaintiff's argument that these purported past acts of discrimination create a factual issue that the job action at issue now was unlawful. First, although the record contains Plaintiff's complaints that Friel obtained his prior positions and salary as a result of discrimination, the record is not sufficient to create a jury issue that unlawful discrimination was the basis for the prior decisions.

Second, in establishing pretext, a " 'plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and

39

[she] cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1265-66 (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)).  Plaintiff has not shown that Friel's leadership experience and the need for continuity– factors identified by Harris and Foster as reasons to exempt Friel from the RIF, and which are neutral considerations that would motivate a reasonable employer– were false.  That is, even assuming that Friel got where he was in the past because he was a male, the reasons articulated by Defendant as to why Friel was excluded from the RIF– his current position and the experience he gained as a result of that position, which reasons were not otherwise shown to be pretextual for gender discrimination– do not establish pretext.

   e.  **June 8 RIF List: Failure to Follow RIF Criteria**

  Finally, Plaintiff claims that Harris did not follow the RIF criteria outlined by the Budget Committee, as articulated by Sorrow.  [Doc. 108 at 37-41].  Although her argument is not entirely clear, it appears that she contends that Harris erred in the 2/2/2 approach because he should have evaluated all Building Department employees against one another, instead of considering each of the three sections of the Department separately.  She also objects to his "hold(ing) supervisors to a different standard" and

40

"retain(ing) individuals who could not serve multiple purposes." [*Id.* at 40]. Plaintiff maintains that she could have done the job of Chief Residential Inspector in the form that the job would take after the RIF. [*Id.*].

Defendant responds that Plaintiff is not permitted to quarrel with the wisdom of the employer's decision. [Doc. 109 at 17 (citing *Chapman*, *id.*)]. It also argues that Plaintiff misunderstands the nature of the Chief Residential Inspector position as it existed after the 2011 RIF. [*Id.* at 19-21].

The Court finds Plaintiff's arguments unavailing. As noted earlier, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . ." *Elrod*, 939 F.2d at 1470. Moreover, these arguments do not provide sufficient grounds to allow a reasonable fact finder to conclude that the criteria followed in the RIF were pretext for discrimination against Plaintiff. Again, Plaintiff's argument appears to be couched as an attack on the wisdom of Defendant's business judgment, an exercise the Eleventh Circuit has repeatedly prohibited lower courts from conducting when evaluating discrimination claims. *Alvarez*, 610 F.3d at 1266; *Rowell*, 433 F.3d at 798; *Chapman*, 229 F.3d at 1030; *Combs*, 106 F.3d at 1543. While Defendant initially considered seniority as the basis for which employees survived the RIF, it chose to modify its criteria in order to not eviscerate the entire Residential unit

41

and to maintain continuity by retaining Friel. Plaintiff has not countered these considerations by demonstrating that they were pretext for unlawful gender discrimination. For that reason, the challenge is rejected in this case.

## IV.   Conclusion

For the reasons herein, the Court **GRANTS** Defendant's motion for summary judgment, [Doc. 66], **DENIES** Plaintiff's motion for leave to file a sur-reply, [Doc. 112], and **DENIES** Plaintiff's construed motion to strike, [Doc. 113].

The Clerk is **DIRECTED** to enter judgment for Defendant.

**IT IS SO ORDERED,** this the 31st day of March, 2014.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

42